# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. JESSICA VELEZ, | ) |
| Plaintiff, | ) |
| | ) Case No. 18-cv-315-CVE-JFJ |
| v. | ) |
| 1. IVY PLACE APARTMENTS, a Domestic Limited Liability Company, | ) |
| 2. MISTY CARPENTER, an Individual, | ) |
| Defendants. | ) |

## COMPLAINT

**COMES NOW** Jessica Velez, Plaintiff in the above-entitled action, by and through her attorneys, David R. Keesling and Timothy S. Kittle, of the law firm, MCMURRAY || KEESLING, and for her causes of action alleges as follows:

### JURISDICTION, VENUE, PARTIES

1. Jurisdiction in this matter is based upon the existence of a federal question under 28 U.S.C. § 1331 (2016) and 28 U.S.C. § 1343(a)(4) (2016), pursuant to claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (2016) and 42 U.S.C. § 1981 (2016).

2. Venue is appropriate as all incidents alleged herein occurred within the Northern District of Oklahoma.

3. Plaintiff Jessica Velez, at all times relevant to the claims alleged herein, was and is a citizen of the State of Oklahoma and a resident of Tulsa County, Oklahoma.

4. Defendant Ivy Place Apartments, at all times relevant to the claims alleged herein, upon information and belief, is an apartment complex that is a domestic for profit limited

liability company, operating in and under the laws of the State of Oklahoma, whose registered agent is Registered Agents, Inc., 30320 Northwest Expressway, Oklahoma City, Oklahoma.

5. Defendant Ivy Place Apartments, at all times relevant to the claims alleged herein, upon information and belief, owned and operated an apartment complex located at 139 North Garnett Road, in the City of Tulsa, Tulsa County, Oklahoma.

6. Defendant Ivy Place Apartments, at all times relevant to the claims alleged herein, upon information and belief, is affiliated with and managed by T.E.H. Realty, 5852 East 20th Street, Kansas City, Missouri.[1]

7. Defendant Ivy Place Apartments, at all times relevant to the claims alleged herein, upon information and belief, was and is an employer affecting commerce that employed fifteen (15) or more employees for each working day during the time period in which Plaintiff was employed by Defendant, as well as for twenty (20) or more calendar weeks preceding Plaintiff's employment with Defendant.  *See* 42 U.S.C. § 12111(5)(A) (2016).

8. Defendant Misty Carpenter, at all times relevant to the claims alleged herein, upon information and belief, was and is a citizen of the State of Oklahoma and a resident of Tulsa County, Oklahoma.

9. Due to the foregoing, this Court has jurisdiction over the parties and subject matter.

---

[1] Correspondence between Plaintiff and her former employer (Defendant) also utilized another entity name, Midwest New Operation, LLC ("MNO").  Certain correspondence received by Plaintiff gives an address for MNO as 645 Penn Street, Suite 507, Reading, Pennsylvania 19601.  This same address is cross-referenced with T.E.H. Management.  MNO also apparently operates as a Missouri LLC, File No. LC001431150, with a listed address of 117 South Lexington Street, Suite 100, Harrisonville, Missouri 64701.  According to the Oklahoma Secretary of State website, entries utilizing "T.E.H. Realty" in some form consistently show the registered agent in Oklahoma to be that named in Paragraph 4 above, as do entries using some form of "Ivy Place."

**STATEMENT OF THE FACTS**

10. Plaintiff Jessica Velez incorporates paragraphs 1 through 9 herein as if fully set forth verbatim.

11. At all times relevant to the claims alleged herein, Plaintiff is and was a person of a recognized and protected racial class, i.e., Hispanic.

12. At all times relevant to the claims alleged herein, Plaintiff Jessica Velez was an employee of Ivy Place Apartments, as defined by 42 U.S.C. § 2000e(f).

13. Plaintiff began her employment with Ivy Place Apartments on or about August 2016 in the position of "Assistant Property Manager."

14. At the time she began her employment with Ivy Place Apartments, Plaintiff's immediate supervisor, the Property Manager, was a female named Bobbi Torre.

15. Approximately one month into Plaintiff's employment with Ivy Place Apartments, Bobbi Torre separated from employment with Ivy Place Apartments.

16. Bobbi Torre was replaced in the Property Manager position by Defendant Misty Carpenter, a white female, in September 2016.

17. Within Misty Carpenter's first week as Plaintiff's direct supervisor, Plaintiff overheard Defendant Carpenter, speaking on the telephone, state that she (Carpenter) was "working on getting rid of all of the wetbacks" that were working at Ivy Place Apartments.

18. Plaintiff understood the term "wetbacks" to be an epithet denigrating people of Mexican /Hispanic racial heritage.

19. Plaintiff found the term uttered by Defendant Misty Carpenter to be patently offensive.

20. Plaintiff reported this offensive remark the next day to the Regional Manager, Defendant Misty Carpenter's supervisor, Efi Kula.

21. Defendant Misty Carpenter, in that same week, made the following racially charged comments in Plaintiff's presence:

    a. "I am so tired of these fucking spics (another epithet directed at Hispanics); they can't do anything right."

    b. "How long does it take for a wetback to cross the river?"

    c. (When Defendant Carpenter would become upset with Plaintiff, Carpenter would pace in front of Plaintiff's desk, stating): "Soon there will be no more fucking Mexicans here."

    d. Defendant Carpenter stated that she intended to replace an Ivy Place housekeeper, Caro (who was of Hispanic racial heritage), because "Mexicans do not know how to get the job done."

    e. Further, Defendant Carpenter stated to Plaintiff that Carpenter preferred her (Carpenter's) sister-in-law because the sister-in-law worked for Carpenter on a previous occasion, and that the sister-in-law was "more qualified because she's white."

    f. Defendant Carpenter also posted a sign on the office door stating, "English Speaking Only," as well as informed the Ivy Place staff that only English was to be spoken in that workplace.

22. Similar to her actions regarding the first racially offensive comment uttered by Defendant Misty Carpenter, Plaintiff reported these comments to Regional Manager Efi Kula.

23. In response to these complaints, Efi Kula stated to Plaintiff the following:

    a. That Plaintiff was acting like a high school student;

  b. That Kula did not want to hear "the drama;"

  c. That Plaintiff and Defendant Misty Carpenter needed to work out their problems;

  d. That Defendant Misty Carpenter is the Property Manager and everything needs to go through Carpenter.

24. Upon receiving these responses from Efi Kula, Plaintiff requested that Kula provide to her the telephone number to Defendant Ivy Place's corporate office.

25. Kula provided a telephone number.

26. Plaintiff called the number provided by Kula three times, leaving a voice message each time.

27. Plaintiff never received a response to any of the messages she left.

28. In October 2016, Defendant Misty Carpenter denied an apartment to a qualified black female applicant in favor of a white female applicant, commenting that she did not want any black tenants as Carpenter did not like black people or their attitudes.

29. Additionally, on or about October 14, 2016, Defendant Misty Carpenter sent a text message to Plaintiff that stated, "Do they give lunch break (sic) in Mexico?"

30. Plaintiff immediately sent a response text to Defendant Carpenter: "OMG!! Misty we discussed that I find your racial comments jokes offensive . . . Will you please stop."

31. Some days later, Defendant Misty Carpenter became upset with Plaintiff and sent Plaintiff home mid-shift.

32. Later that day, Defendant Misty Carpenter advised Plaintiff that she (Carpenter) was replacing Plaintiff with a female who was working at Ivy Place Apartments on a part-time basis; Plaintiff picked up her belongings and departed.

33. Compounding the issue, Defendant Misty Carpenter called Plaintiff on her cell phone around 11:00 p.m., telling Plaintiff that Carpenter was "looking for clowns to kill" Plaintiff, and further, called Plaintiff a "fucking wetback and a spic."

34. Defendant Misty Carpenter further stated that she would find a way to get Plaintiff deported.[2]

35. Moreover, on October 29, 2016, Defendant Misty Carpenter sent Plaintiff a text message referring to Plaintiff as a "fucking wetback," and further wrote, "Have a good life unemployed oh and you are banned from the property[;] if I see you here, I will have you arrested."

36. Plaintiff's employment was ended by Defendants Misty Carpenter and Ivy Place Apartments on or about October 29, 2016.

37. Plaintiff again reported these incidents to Efi Kula, requesting that Kula ensure that Defendant Misty Carpenter did not have Plaintiff's personal information; Plaintiff also advised Kula that she [Plaintiff] reported these threatening communications to the Tulsa Police Department.

38. During the week of the 2016 Presidential election, Defendant Misty Carpenter called Plaintiff around 3:00 a.m. simply to harass Plaintiff.

39. In the phone call, Defendant Carpenter articulated the following:

    a. Asked Plaintiff if she [Plaintiff] was happy about Donald Trump being elected;

    b. Repeated her threat that she would get Plaintiff deported;

    c. Again called Plaintiff a "fucking wetback."

---

[2] This comment is emblematic of Defendant Misty Carpenter's racial animus as Plaintiff, though Mexican /Hispanic in racial heritage, is an American citizen by birth.

40. Though she was no longer employed by Ivy Place Apartments, Plaintiff again called Efi Kula and reported Defendant Misty Carpenter's offensive conduct.

41. Plaintiff again requested a telephone number to Defendant Ivy Place's corporate office; Kula gave her the same number he previously provided.

42. Plaintiff asked Kula for a second number; Kula provide a number for a male named Scott Benson, who held a management position with Defendant Ivy Place.

43. Scott Benson appeared uninterested in Plaintiff's complaints; Benson stated he would call Plaintiff back but never did so.

44. Plaintiff made several subsequent attempts to contact Defendant Ivy's corporate office.

45. In December 2016, Plaintiff received an email from a bookkeeper (with T.E.H. Realty) regarding Plaintiff's final pay; the paystub was incorrect.

46. Plaintiff then telephoned Defendant Misty Carpenter regarding the issue.

47. Defendant Carpenter stated that she had a paycheck for Plaintiff, but since Plaintiff was banned from the Ivy Place Apartments, the only method for Plaintiff to receive the check was via regular mail.

48. Plaintiff provided her address to Defendant Misty Carpenter for the sole purpose of having her final paycheck mailed to her at her home address.

49. That same night, at approximately 10:00 p.m., Plaintiff saw Defendant Misty Carpenter in her car, parked next to Plaintiff's car.

50. When Defendant Carpenter realized that Plaintiff saw her, Carpenter drove away.

51. On or about December 12, 2016, Plaintiff, by and through retained counsel, sent a Uniform Intake Questionnaire and related materials to the Oklahoma City Office of the Equal

Employment Opportunity Commission ("EEOC"), complaining of the race based hostile work environment and retaliation described above.

52. Pursuant to Plaintiff's Intake Questionnaire and materials, EEOC initiated an investigation into Plaintiff's allegations.

53. Pursuant to its investigation, EEOC issued a "Letter of Determination," dated November 3, 2017, articulating its finding of probable cause to believe that Defendant Ivy Place violated Plaintiff's rights, on the basis of her National Origin (Mexican), and invited those two parties to participate in EEOC's "Conciliation" process.

54. Subsequent thereto, on November 10, 2017, Plaintiff received a telephone call, which upon information and belief emanated from the Ivy Place Office, in which the caller stated to Plaintiff, "Bitch, we're gonna find you."

55. Plaintiff reported this to the Tulsa Police Department, as well as to EEOC (the latter by and through counsel).

56. EEOC issued a "Notice of Conciliation Failure" in a letter dated April 4, 2018, noting that efforts to resolve Plaintiff's matter through EEOC were unsuccessful.

57. Additionally, on that same date, EEOC issued "Notice of Right to Sue (Conciliation Failure)," noting that "The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge."

58. Accordingly this Complaint is being filed within 90 days of the issuance of the "Right to Sue" Letter, in conformity with the applicable statute, 42 U.S.C. § 2000e-5(f)(1), and is therefore timely.[3]

---

[3] Actions brought under 42 U.S.C. § 1981 simply have a 4-year statute of limitations. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 124 S. Ct. 1836 (2004); *Robinson v. City of Arkansas City*, 896 F. Supp. 2d 1020 (D. Kan. 2012) (applying *Jones v. R.R. Donnelly & Sons Co.*).

## FIRST CAUSE OF ACTION
### UNLAWFUL DISCRIMINATION /HOSTILE WORK ENVIRONMENT
### TITLE VII, 42 U.S.C. § 2000e *et seq.* (2016)
### AS TO DEFENDANT IVY PLACE APARTMENTS

59. Plaintiff Jessica Velez incorporates paragraphs 1 through 58 herein as if fully set forth verbatim.

60. Plaintiff Jessica Velez was subjected to slurs, insults, verbal conduct and acts of intimidation based upon her race and national origin in her workplace at Ivy Place Apartments, by her direct supervisor, Defendant Misty Carpenter.

61. The conduct, as described herein, was unwelcome.

62. The conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff Jessica Velez's employment and created a racially abusive or hostile work environment.

63. Plaintiff Jessica Velez perceived her working environment to be abusive or hostile.

64. A reasonable person in the place of Plaintiff Jessica Velez would consider the working environment to be abusive or hostile.

65. As a result of the actions constituting unlawful harassment because of Plaintiff Jessica Velez's race and national origin, as described herein, Plaintiff's rights were violated, causing her injury.

66. Consequently, Plaintiff Jessica Velez is entitled to damages and other relief as set forth herein.

## SECOND CAUSE OF ACTION
### Unlawful Discrimination /Hostile Work Environment
### 42 U.S.C. § 1981 (2016)
### As to Defendants Ivy Place Apartments and Misty Carpenter

67. Plaintiff Jessica Velez incorporates paragraphs 1 through 66 herein as if fully set forth verbatim.

68. Plaintiff Jessica Velez was subjected to slurs, insults, verbal conduct and acts of intimidation based upon her race and national origin in her workplace at Ivy Place Apartments, by her direct supervisor, Defendant Misty Carpenter.

69. The conduct, as described herein, was unwelcome.

70. The conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff Jessica Velez's employment and created a racially abusive or hostile work environment.

71. Plaintiff Jessica Velez perceived her working environment to be abusive or hostile.

72. A reasonable person in the place of Plaintiff Jessica Velez would consider the working environment to be abusive or hostile.

73. As a result of the actions constituting unlawful harassment because of Plaintiff Jessica Velez's race and national origin, as described herein, Plaintiff's rights were violated, causing her injury.

74. Consequently, Plaintiff Jessica Velez is entitled to damages and other relief as set forth herein.

## THIRD CAUSE OF ACTION
### UNLAWFUL RETALIATION
### TITLE VII, 42 U.S.C. § 2000e *et seq.* (2016)
### AS TO DEFENDANT IVY PLACE APARTMENTS

75. Plaintiff Jessica Velez incorporates paragraphs 1 through 74 herein as if fully set forth verbatim.

76. Plaintiff Jessica Velez was subjected to slurs, insults, verbal conduct and acts of intimidation based upon her race and national origin in her workplace at Ivy Place Apartments, by her direct supervisor, Defendant Misty Carpenter.

77. Plaintiff Jessica Velez engaged in protected activity by complaining to Defendant Ivy Place Apartments' management personnel that she was being harassed on the basis of her race and national origin, in Plaintiff's workplace, by her direct supervisor, Defendant Misty Carpenter.

78. In response to Plaintiff Jessica Velez's complaints regarding the unlawful harassment she encountered in her workplace on the part of her direct supervisor, Defendant Misty Carpenter, Defendant Ivy Place Apartments subjected Plaintiff to an adverse employment action, discharge from employment.

79. The discharge from employment was effected because of Plaintiff Jessica Velez complaining about the unlawful harassment she encountered in her workplace on the part of her direct supervisor, Defendant Misty Carpenter.

80. As a result of the actions constituting a retaliatory discharge because of Plaintiff Jessica Velez's complaints of unlawful harassment in her workplace on the basis of her race and national origin, as described herein, Plaintiff's rights were violated, causing her injury.

81. Consequently, Plaintiff Jessica Velez is entitled to damages and other relief as set forth herein.

## FOURTH CAUSE OF ACTION
### UNLAWFUL RETALIATION
### 42 U.S.C. § 1981 (2016)
### AS TO DEFENDANTS IVY PLACE APARTMENTS AND MISTY CARPENTER

82. Plaintiff Jessica Velez incorporates paragraphs 1 through 81 herein as if fully set forth verbatim.

83. Plaintiff Jessica Velez was subjected to slurs, insults, verbal conduct and acts of intimidation based upon her race and national origin in her workplace at Ivy Place Apartments, by her direct supervisor, Defendant Misty Carpenter.

84. Plaintiff Jessica Velez engaged in protected activity by complaining to Defendant Ivy Place Apartments' management personnel that she was being harassed on the basis of her race and national origin, in Plaintiff's workplace, by her direct supervisor, Defendant Misty Carpenter.

85. In response to Plaintiff Jessica Velez's complaints regarding the unlawful harassment she encountered in her workplace on the part of her direct supervisor, Defendant Misty Carpenter, Defendant Ivy Place Apartments subjected Plaintiff to an adverse employment action, discharge from employment.

86. The discharge from employment was effected because of Plaintiff Jessica Velez complaining about the unlawful harassment she encountered in her workplace on the part of her direct supervisor, Defendant Misty Carpenter.

87. As a result of the actions constituting a retaliatory discharge because of Plaintiff Jessica Velez's complaints of unlawful harassment in her workplace on the basis of her race and national origin, as described herein, Plaintiff's rights were violated, causing her injury.

88. Consequently, Plaintiff Jessica Velez is entitled to damages and other relief as set forth herein.

**PUNITIVE AND EXEMPLARY DAMAGES**

89. Plaintiff Jessica Velez incorporates paragraphs 1 through 88 herein as if fully set forth verbatim.

90. The acts and omissions by Defendants Ivy Place Apartments and Misty Carpenter, as set forth in the preceding paragraphs, demonstrate that Defendants were engaged in conduct evincing malice or reckless indifference to Plaintiff's federally protected rights.

91. As a direct result of Defendants' malice and /or reckless disregard for Plaintiff's rights, Plaintiff is entitled to exemplary and punitive damages in an amount to be determined by a jury commensurate with the financial resources available to Defendants Ivy Place Apartments and Misty Carpenter sufficient to deter others similarly situated from like behavior.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Jessica Velez prays this Court to grant to her the following relief:

A. Hold that Defendant Ivy Place Apartments has violated Plaintiff Jessica Velez's rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as 42 U.S.C. § 1981, as a matter of law;

B. Hold that Defendant Misty Carpenter has violated Plaintiff Jessica Velez's rights, pursuant to as 42 U.S.C. § 1981, as a matter of law;

C. Judgment against each Defendant in excess of Seventy-Five Thousand Dollars ($75,000.00);

D. Punitive damages against each Defendant to the extent permitted by law;

E. Order Defendants to pay the attorney fees, costs, and accruing interest incurred by Plaintiff in prosecuting this matter;

  F. Any other such further relief this Court deems just and proper.

          Respectfully submitted,

          **MCMURRAY || KEESLING**

          /s/ David R. Keesling
          David R. Keesling, OBA No. 17881
          Timothy S. Kittle, OBA No. 21979
          6660 South Sheridan Road, Suite 250
          Tulsa, Oklahoma 74133
          (918) 998-9350 – Telephone
          (918) 998-9360 – Facsimile
          David@KLGattorneys.com
          Tim@KLGattorneys.com
          ***Attorneys for Plaintiff:***
          ***Jessica Velez***