UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JESSICA VELEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-CV-0315-CVE-JFJ |
| ) | |
| ) | |
| MISTY CARPENTER, ) | |
| KTTO2-PICKWICK, LLC, and ) | |
| MIDWEST NEW OPERATIONS, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

On June 8 and 10, 2020, the Court entered orders (Dkt. ## 74, 76) finding that default judgment should be entered against defendants Misty Carpenter, KTTO2-Pickwick, LLC (KTTO2), and Midwest New Operations (Midwest), and the Court set a briefing schedule on the issue of damages. Plaintiff Jessica Velez has filed a brief concerning the amount of damages she is seeking, and plaintiff is requesting $31,000 in actual damages in the form of lost wages, $31,000 in compensatory damages for emotional distress, and $155,000 in punitive damages. None of the defendants filed a response to plaintiff's brief concerning the amount of damages to be awarded, and the issue of damages is ripe for adjudication.

"After a default judgment is handed down, a defendant admits to a complaint's well-pleaded facts and forfeits his or her ability to contest those facts." Tripodi v. Welch, 810 F.3d 761, 764 (10th Cir. 2016). However, a defendant is not prohibited from challenging the legal sufficiency of the admitted allegations and a default judgment must be supported by an adequate factual basis. Id. at 765. In this case, the Court will rely on the allegations of the amended complaint (Dkt. # 21), and

any additional evidence provided by plaintiff with her brief concerning damages, to establish the factual basis for the award of damages.

Plaintiff, a Hispanic female, was hired by Ivy Place Apartments in August 2016 as an assistant property manager, and the property manager was a woman named Bobbi Torre. Dkt. # 21, at 6. After about a month, Torre left her position as property manager and Misty Carpenter was hired as the new property manager. Id. at 7. Plaintiff heard Carpenter speaking on the phone, and Carpenter said that she was "working on getting rid of all of the wetbacks" at Ivy Place Apartments. Id. Plaintiff states that Carpenter made similar comments in her presence over the next week, and plaintiff reported Carpenter's statements to Carpenter's supervisor, Efi Kula. Id. Kula told plaintiff he did not want to hear about the "drama" and that plaintiff and Carpenter needed to work out their own problems. Id. at 8. Plaintiff asked for a phone number to contact the corporate offices of Ivy Place Apartments and she left a message three times, but she never received a response from the corporate offices. Id. at 9. Carpenter continued to engage in offensive behavior. In October 2016, Carpenter denied an apartment to a black female applicant because Carpenter disliked black people, and the apartment was leased to a white female. Id. On October 14, 2016, Carpenter sent a text message to plaintiff asking if "they give lunch break[s] in Mexico." Id. Several days later, Carpenter told plaintiff to leave in the middle of her shift and that was plaintiff's last day of work for Ivy Place Apartments. At 11:00 p.m. that night, Carpenter called plaintiff and said that she was "looking for clowns to kill," and she called plaintiff a "fucking wetback and a spic." Id. She also said that she was looking for a way to have plaintiff deported, even though plaintiff is a United States citizen who was born in the United States. Id. Plaintiff's employment was formally terminated on October 29,

2016, and Carpenter sent a text message to plaintiff informing her that she was banned from Ivy Place Apartments. Id. at 10. Plaintiff reported Carpenter's conduct to Kula and requested that Carpenter not have access to plaintiff's contact information. Id.

After the 2016 presidential election, Carpenter called plaintiff at 3:00 a.m. and asked if plaintiff was happy about the election of Donald Trump. Id. Carpenter repeated her claim that she would seek to have plaintiff deported and called plaintiff a "fucking wetback." Id. Plaintiff received her final paycheck from Ivy Place Apartments and found that the paystub was incorrect, and she called Carpenter to correct the problem. Id. Carpenter would not allow plaintiff to come to Ivy Place Apartments to pick up a corrected check, and plaintiff gave Carpenter her address for the purpose of mailing the check. Id. Later that night, plaintiff looked outside and saw Carpenter sitting in her car in front of plaintiff's house. Id. On December 12, 2016, plaintiff submitted an intake questionnaire to the Equal Employment Opportunity Commission (EEOC), and the EEOC issued a letter of determination inviting the parties to engage in a conciliation process. Id. at 11. On November 10, 2017, plaintiff received a call from the Ivy Place Apartment office and the caller said "bitch, we're gonna find you." Id. at 12. Conciliation efforts with the EEOC were unsuccessful and plaintiff received a right to sue letter noting that the EEOC found reasonable cause to believe some or all of plaintiff's allegations of discrimination and retaliation. Id.

Plaintiff filed this case alleging claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII), and 42 U.S.C. § 1981. Plaintiff alleges Title VII claims against her employer, KTTO2 and Midwest,[1] and § 1981 claims against all

---

[1] Plaintiff states that the parties conferred about the corporate identity of her former employer, and the parties agreed that KTTO2 and Midwest were the proper defendants for plaintiff's Title VII claims. Dkt. # 77, at 6 n.1.

3

defendants. Under 42 U.S.C. § 1981a, a plaintiff may recover compensatory and punitive damages for an intentional violation of Title VII. "Compensatory damages" include future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life. 42 U.S.C. § 1981a(b)(3). Punitive damages may be awarded if the plaintiff can demonstrate that the defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights" of the aggrieved person. 42 U.S.C. § 1981a(b)(1). A court is also authorized to award equitable relief such as back pay, front pay, and injunctive relief. 42 U.S.C. § 2000e-5(g).

The Court will initially consider plaintiff's demand for $31,000 in damages for lost wages.[2] The evidence shows that plaintiff was earning $28,000 per year as an assistant property manager, and her employment was terminated in October 2016. Dkt. # 77-6, at 2. Plaintiff worked at the Hard Rock Casino for about one month in January 2017, and she was actively seeking employment until she was ordered by her physician in January 2018 to rest due to a high risk pregnancy. Dkt. # 77-11, at 11. Plaintiff is seeking damages for lost wages for the period of time from her termination until January 2018 when she would have been unable to work due to her high-risk pregnancy, minus any amount she earned while working at the Hard Rock Casino. Plaintiff's monthly salary while employed at Ivy Place Apartments was $2,333.33 and her salary over a 14 month period would have been $32,666.62. Plaintiff states that she earned approximately $1,600 while working at the Hard Rock Casino, and she requests $31,000 in damages for lost wages. The Court finds that this is a

---

[2] As to lost wages, the Court finds that these damages should be awarded as to plaintiff's former employer only. There are no allegations that Carpenter could be treated as plaintiff's employer, and damages for lost wages will be awarded against defendants KTTO2 and Midwest only.

reasonable basis for calculation of plaintiff's damages for lost wages, and plaintiff will be awarded $31,000 as damages for lost wages.

Plaintiff requests at least $31,000 as compensatory damages for emotional distress and, as to plaintiff's Title VII claims, these damages are subject to a statutory limit under 42 U.S.C. § 1981a(b)(3) depending on the number of persons employed by the defendant.[3]  The statutory cap applies to the sum of compensatory damages and punitive damages, and the combined total of compensatory and punitive damages may not exceed the statutory cap.  Plaintiff argues that the highest statutory cap of $300,000 should apply, because defendants defaulted and plaintiff was not permitted to conduct discovery on this issue.  However, plaintiff has not shown that she made any other efforts to determine whether KTTO2 or Midwest has 500 or more employees for the highest cap of $300,000, and the amended complaint simply alleges that KTTO2 and Midwest have 15 or more employees.  Dkt. # 21, at 5.  The Court will rely on the allegations of the amended complaint and finds that plaintiff's compensatory and punitive damages are subject to the $50,000 cap applicable for employers with more than 14 but fewer than 101 employees.  42 U.S.C. § 1981(b)(3)(A).

The Court finds that plaintiff's request for $31,000 in compensatory damages is reasonable given the severity of workplace harassment and the continuation of the harassment after plaintiff's employment was terminated.  Plaintiff states that her employer's refusal to take her complaints of harassment seriously caused her emotional distress and anguish, and Carpenter's post-termination behavior caused her to fear for the safety of herself and her family.  Dkt. # 77-1, at 3. Plaintiff's

---

[3]  The cap on compensatory and punitive damages is not applicable to claims under § 1981. O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1257 (10th Cir. 2001).

allegations support a finding that Carpenter engaged in highly offensive behavior, and Carpenter's conduct could reasonably be expected to cause emotional distress.  The Court also finds that an additional award of punitive damages is appropriate against Carpenter, because plaintiff's allegations support a finding that Carpenter acted with malice or reckless indifference to plaintiff's federally protected rights.  Plaintiff argues that she has asserted claims against Carpenter under § 1981, and the Court may award punitive damages without regard to the $50,000 cap applicable to her Title VII claims against KTTO2 and Midwest.  Dkt. # 77, at 16.  The Court finds that an award of punitive damages against Carpenter in the amount of $31,000 is appropriate.  This amount, combined with the compensatory damages of $31,000, exceeds the $50,000 cap applicable to plaintiff's Title VII claims, but the Court is permitted to award punitive damages under § 1981 without reference to the damages cap.  O'Neal, 237 F.3d at 1257.  The judgment shall be joint and several against all defendants as to the award of compensatory damages only.

**IT IS THEREFORE ORDERED** that plaintiff will be awarded $31,000 in damages for lost wages against KTTO2 and Midwest, and $31,000 in compensatory damages against all defendants. In addition, plaintiff will be awarded punitive damages in the amount of $31,000 against Carpenter only.  A separate judgment is entered herewith.

**DATED** this 15th day of October, 2020.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE